77 N.J. Super. 209 (1962)
185 A.2d 870
ANNA R. MORGAN, CLAIMANT-APPELLANT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND NATIONAL BISCUIT COMPANY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1962.
Decided November 19, 1962.
*210 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Seymour Margulies argued the cause for appellant (Mr. Morris Chesler, attorney).
Mr. Edward A. Kaplan argued the cause for respondent, Board of Review, Division of Employment Security, Department of Labor and Industry, State of New Jersey.
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal from a decision of the respondent Board of Review (Board) holding that claimant is disqualified from unemployment benefits under the provisions of N.J.S.A. 43:21-5(a) for leaving work voluntarily without good cause attributable to such work.
Claimant resides at 227 West 11th Street, New York City. For 46 years she was employed as a matron by the National Biscuit Company (National). While respondent's plant was in New York, claimant walked to her work in 20 minutes. Three years and eight months after National moved its plant to Fair Lawn, N.J. claimant left its employ. Throughout this period, she commuted from her home in New York to *211 the Fair Lawn plant, walking six blocks to the Eighth Avenue subway, riding the subway for 35 minutes to a bus terminal on 58th Street, and riding a bus for 25 minutes to respondent's plant. She worked an eight-hour day starting at 7:15 A.M.
National had no compulsory retirement plan. After 15 years of service, an employee would be eligible at 55 years of age for a reduced pension. After 25 years of service and at 65 years of age, an employee would be entitled to a full pension of $100 per month.
In April 1961 claimant gave National three months' notice that she intended to quit her job. In June 1961, while still employed, she applied for Social Security Old Age Benefits. Claimant was 62 years of age when she left her employment on August 31, 1961. She then began receiving a monthly pension of $82 from respondent and social security benefits of $78.20 per month.
Claimant stated in her application of September 7, 1961 for unemployment benefits that she had ceased working for National as a result of her "voluntary retirement." At her initial interview, claimant signed a statement promising to "look for any work that I can get." Her application was denied for the reason that she was able to work but left her job to receive her pension, which "constitutes a voluntary quit without cause."
In her notice to the Appeal Tribunal for further consideration, she said for the first time, "I feel that I had a right to leave this job because of the excessive traveling necessary." At the formal hearing before the Appeal Tribunal, claimant explained leaving her work because "it was too much travel" and commuting made her "aggravated." She objected to early rising, the inclement weather, and "the rushing to get the train." Two or three days a month she had reported ill and was absent from work. A doctor's certificate dated September 28, 1961 was produced at the hearing. It stated that claimant had been in his care since January 5, 1933 and that his diagnosis was "duodenal ulcer and had a *212 nephrectomy 14 years ago." Despite these infirmities, Mrs. Morgan in his opinion was capable of working a full eight-hour day as a matron.
Claimant testified that it was not her health that caused her to quit her job with National. She stated that she had been seeking work in department stores in New York and Brooklyn. She had been unsuccessful, since these stores had no occasion to employ a matron or attendant and since she had no training in sales work. She had not registered for employment with any private agency but had read newspaper "ads." The examiner ruled that claimant was eligible for benefits without disqualification.
Further timely appeal was taken to the Board of Review. After a hearing, the Board made a finding of fact that claimant voluntarily left her work and withdrew from the labor market, to take a pension as well as social security benefits upon reaching retirement age. A majority vote of the Board found this motivation constituted leaving her employment voluntarily without good cause attributable to her work and disqualified her for unemployment benefits under N.J.S.A. 43:21-5(a).
On appeal to this court claimant-appellant argues, as her sole ground for reversal, that she was compelled to leave her employment by reason of the hardship in commuting from her home in New York to the employer's plant in Fair Lawn and that this constitutes good cause entitling her to unemployment compensation benefits.
The pertinent portion of N.J.S.A. 43:21-5(a), dealing with disqualifications on which claimant was denied benefits, is as follows:

"Disqualification for benefits
An individual shall be disqualified for benefits:
(a) For the week in which he has left work voluntarily without good cause attributable to such work, and for each week thereafter until he has earned in employment (which may be with an employing unit having in employment 1 or more individuals) at least 4 times his weekly benefit rate, as determined in each case; * * *."
*213 The requirement that "good cause" be "attributable to such work" was added to subsection 5(a) by a legislative amendment which became effective on July 1, 1961 (L. 1961, c. 43). Prior to that amendment, the term "good cause" was construed to include causes personal to the claimant though unconnected with the work; it signified a reason sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed. Berry, Whitson & Berry v. Division of Employment Security, 21 N.J. 73, 75-76 (1956); Krauss v. A. & M. Karagheusian, 13 N.J. 447, 464-465 (1953); Medwick v. Bd. of Review, 69 N.J. Super. 338, 343 (App. Div. 1961); Goebelbecker v. State, 53 N.J. Super. 53, 59 (App. Div. 1958).
The burden of proof is upon the claimant to establish that her voluntary separation from her employment was for good cause attributable to such work. Compare DiMicele v. General Motors Corp., 51 N.J. Super. 167, 171 (App. Div. 1958), affirmed 29 N.J. 427 (1959). The statutory scheme entrusts the determination of the question whether a claimant quit work voluntarily without good cause attributable to such work, in the first instance, to the administrative agency and its appeal tribunals. In reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether we would come to the same conclusion if the original determination was ours to make, but rather whether the fact-finder could reasonably so conclude upon the proofs. Spatola v. Board of Review, 72 N.J. Super. 483, 484-485 (App. Div. 1962); Marczi v. Board of Review, 63 N.J. Super. 75, 83-84 (App. Div. 1960).
Claimant admittedly left her work after giving three months' advance notice of her intention to terminate her employment and take pension and social security benefits. The reason she subsequently gave for retiring was the excessive traveling. But she did not quit immediately when the company relocated its plant. Instead, she continued to commute from her home to Fair Lawn until she could receive social security benefits. Cf. Mayo v. Unemployment Compensation *214 Board of Review, 196 Pa. Super. 573, 176 A.2d 159 (Sup. Ct. 1961). See also Krauss v. A. & M. Karagheusian, supra, 13 N.J., at p. 458.
The commuting may have been inconvenient, but it was not necessarily excessive. She endured that inconvenience for three years and eight months without any appreciable ill effects. There may be some circumstances in which travel connected with the employment would be so harmful as to justify voluntary departure from the job. Here, the commuting was merely one of the conditions of her employment, which she accepted by continuing in the company's employ after the plant was moved. Hanna v. Unemployment Compensation, 172 Pa. Super. 417, 94 A.2d 178, 180 (Super. Ct. 1953). An employee's problem of commuting to and from his work may be considered a good personal reason for leaving his employment, but it is not ordinarily to be considered a cause that is connected with or attributable to the work. Commuting is usually considered a problem of the employee. Putnam v. Dept. of Employment Security, 103 N.H. 495, 175 A.2d 519, 520 (N.H. Sup. Ct. 1961); Szojka v. Unemployment Compensation Bd. of Review, 187 Pa. Super. 643, 146 A.2d 81 (Super. Ct. 1958).
At oral argument, our attention was directed to In the Matter of Mary Ellen Quinn, B.R. 53177-C (1962), which concerned an employee of National Biscuit Co. who lived in the Bronx, commuted to Fair Lawn after the plant's relocation, and subsequently quit. The Board ruled that claimant was not disqualified from benefits. However, that case is factually inapposite to the present case. There, claimant's doctor diagnosed her condition as "hypertensive cardiovascular disease with congestive heart failure." Claimant's blood pressure was 240 systolic and 100 diastolic. Her doctor recommended that she confine her work to the area near her home.
In the present case, claimant had an ulcer which had existed for 14 years prior to her quitting. No connection is claimed between the commuting and her ulcerous condition. *215 The record is without proof that her health was impaired by her travelling. She worked at the Fair Lawn plant for three years and eight months, leaving only when she became eligible for benefits. Furthermore, her doctor certified that claimant was capable of continuing to work an eight-hour day as a matron.
Having reviewed the proofs in this case, we are satisfied that they sustain the factual findings and decision of the Board. Accordingly, the determination is affirmed.