[No. 63-40656-3.    Division Three.    May 1, 1970.]

In the Matter of GEORGIA A. TUNGET, *Respondent,* v. THE STATE OF WASHINGTON EMPLOYMENT SECURITY DEPARTMENT, *Appellant.*

*Slade Gorton, Attorney General,* and *Robert J. Gunovick, Assistant,* for appellant.

*K. D. Peterson* (of *Milne & Peterson*), for respondent.

**REVIEW GRANTED BY SUPREME COURT**

Munson, J.—Respondent-applicant, Georgia A. Tunget, was employed by House Laundry & Dry Cleaning Co., Inc. for over 17 years. In December of 1967, she became ill and unable to work. Approximately 6 weeks later House Laundry & Dry Cleaning Co., Inc. terminated her employment. On February 23, 1968, she applied for unemployment compensation and on March 5, 1968 her physician certified her as being able to work.

At the end of an interview on March 11, 1968 with a representative of the Employment Security Department, respondent signed a statement containing the following:

I haven't checked for work anywhere since employed with Mr. House. I wouldn't be interested in learning some other work or training for other work.

Respondent was thereafter referred to an employment service counselor who suggested she inquire at potato processing plants in the Ephrata area, *i.e.*, Quincy and Moses Lake.

At a second interview on March 25, 1968, respondent signed the following statement:

The E. S. Counselor suggested I consider working in the processing plants. I've considered this and decided not to do it. I have checked around town with Western Auto, Twin Cafe and Don's Rexal.

The Employment Security Department subsequently denied her benefits on the basis that she was neither available for work nor able to work. At respondent's request she was given a hearing before an examiner on April 25, 1968. From the incomplete record before this court, it appears he sustained the denial. The examiner's decision was upheld by the appeal tribunal and subsequently by the commissioner. During the hearing on April 25, 1968, respondent stated she would be willing to work in processing plants if they were located in the immediate Ephrata area but not elsewhere because she did not drive.

Respondent appealed to the superior court and the com-

missioner's decision was reversed. The following excerpt from the court's oral opinion illustrates the rationale underlying its position:

[T]here is absolutely no fact in this record that shows that this woman is not able to work. In other words, I can't see where the commissioner or the Unemployment Compensation representative, Mr. Rush, who made the determination notice, had any facts before him that showed that this woman was not able to work.

This woman was discharged from work and was not rehired after an illness. And I don't think there is any showing that she is not able to work, and I don't think there is any showing that she is not available for work.

The only suggestion that evidently the department made was that she seek work in the processing plants. The processing plants are from 17 to 40 miles away from Ephrata; some of them work at various hours of the day; there is no showing that there would have been any job available. But, on the other hand, I don't think that the fact that this woman was not willing to follow the suggestion to seek work in the processing plants in other towns, to which there is no public transportation, would be a showing or a basis for a decision that she wasn't available for work. She lives in the community of Ephrata, and I think that is the community we ought to be talking about.

The record supports the trial court's finding that respondent was able to work, at least after her physician's certification, on March 5, 1968.

The primary issue before this court is whether respondent was, during the period in question, available for work.

■ The scope of judicial review for administrative proceedings is governed by RCW 34.04.130(6) as amended by the 1967 legislature. From the tenor of the trial court's oral decision, it is evident the court's basis for reversal lies within subsection (e) of the above statute:

The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petition-

ers may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

. . .

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; . . .

In *Ancheta v. Daly*, 77 Wn.2d 255, 260, 461 P.2d 531 (1969), our Supreme Court defined the term "clearly erroneous" as follows:

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

The reviewing superior court may not substitute its judgment for that of the administrative body unless the record made at the administrative hearing, considered in its entirety, leaves a definite and firm conviction a mistake has been made.

The record before this court is the same as the one before the trial court, *i.e.*, it was made solely before the administrative body. This record leaves much to be desired, in that (1) the statement of facts of the hearing examiner abruptly ends and is without authentication by either the examiner or the reporter; and (2) the findings of the examiner consist of one page setting forth six findings and no conclusions, and is unsigned, without a place for signature. From what is included therein, we believe the trial court exceeded the scope of judicial review now allowed by RCW 34.04.130(6).

■ The burden of proof to establish eligibility for benefits under the unemployment compensation act rests upon the claimant. *Jacobs v. Office of Unemployment Compensation & Placement*, 27 Wn.2d 641, 179 P.2d 707 (1947); *Moya v. Employment Sec. Comm'n*, 80 N.M. 39, 450 P.2d 925 (1969); *Department of Indus. Relations v. Tomlinson*, 36 So.2d 496 (Ala. 1948).

■ Where there is no duty resting upon the employer from custom or contract, express or implied, to furnish means of transportation for his employees to and from

work, the burden is upon them to provide themselves with such transportation. When an employee has this burden and is unable to provide himself with same, even through no fault of his own, he is not available for work. *Jacobs v. Office of Unemployment Compensation & Placement, supra,* quoting with approval *Copeland v. Oklahoma Employment Sec. Comm'n,* 197 Okla. 429, 172 P.2d 420 (1946). *Cf. Clark v. Bogus Basin Recreational Ass'n,* 91 Idaho 916, 435 P.2d 256 (1967); *Mississippi Employment Sec. Comm'n v. Ballard,* 174 So.2d 367 (Miss. 1965); *Huiet v. Wallace,* 108 Ga. App. 208, 132 S.E.2d 523 (1963); *Morgan v. Board of Review, Div. of Employment Sec., Dept. of Labor & Indus.,* 77 N.J. Super. 209, 185 A.2d 870 (1962); *Putnam v. Department of Employment Sec.,* 103 N.H. 495, 175 A.2d 519 (1961); *Mohler v. Department of Labor,* 409 Ill. 79, 97 N.E.2d 762, 24 A.L.R.2d 1393 (1951); *Farrar v. Director of Div. of Employment Sec.,* 84 N.E.2d 540 (Mass. 1949); *Department of Indus. Relations v. Tomlinson, supra; Kontner v. Unemployment Compensation Board of Review,* 148 Ohio 614, 76 N.E.2d 611 (1947).

■ Since claimant has the burden of providing transportation to and from work, her reason for not seeking work at the processing plants—"I don't drive"—does not meet her burden of showing eligibility. Claimant had the burden of showing in the record whether or not public or private transportation, car pools, family transportation, or a ride with a co-worker were available. No evidence of any kind appears in the record. The trial court's comment "there is no public or scheduled commercial transportation" is dehors the record and could not be considered. Even if it was considered, the record fails to negate other possibilities of transportation.

The available labor market in Grant County apparently is not restricted to the city of Ephrata. Processing plants referred to in this record are located in nearby areas. In determining a claimant's availability for work, one of the factors to be considered is the distance from one's residence to a potential source of employment. However, many peo-

ple today are employed at locations in excess of 17 miles from their homes. Such a distance is not unreasonable in the present labor market. To hold that a claimant should not at least explore employment possibilities within the available labor market in the area would be too restrictive an interpretation of the Employment Security Act. Although the preamble, set forth in RCW 50.01.010, states that the act should be liberally construed for the purpose of reducing involuntary unemployment, the preamble cannot overcome the context of a specific statute within the act. *In re Bale,* 63 Wn.2d 83, 87, 385 P.2d 545 (1963). Herein the respondent could not restrict her availability for work to Ephrata because she did not drive an automobile.

The department may be paying benefits to claimants less deserving than respondent. If so, those cases are not before this court. We are unable to justify granting benefits to respondent on that basis. To remedy that inequity, if such exists, is for either the executive or legislative branch of government.

Respondent states there is no evidence in the record of any job openings at the processing plants. This is true, but such was not necessary. That fact does not bear upon the proof required of respondent: (1) she is available for work, and (2) actually seeking same.

The burden being upon the claimant to show evidence of her eligibility for benefits, this court finds there is insufficient evidence in the record to substantiate the trial court's findings concerning her eligibility.

Judgment is reversed with instructions to enter judgment sustaining the commissioner's decision.

EVANS, C. J., and GREEN, J., concur.

Petition for rehearing denied June 26, 1970.