Bethel J. HACKENMILLER, Relator,

v.

YE OLDE BUTCHER SHOPPE and Commissioner of Jobs and Training, Respondents.

No. C1–87–1021.

Court of Appeals of Minnesota.

Nov. 24, 1987.

Bethel J. Hackenmiller, pro se.

Robert Suk, Rochester, for Ye Olde Butcher Shoppe.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Considered and decided by NORTON, P.J., and MULALLY and LOMMEN, JJ.,[*] with oral argument waived.

## OPINION

A. PAUL LOMMEN, Acting Judge.

Relator Bethel Hackenmiller seeks review of a decision by the Commissioner of Jobs and Training which disqualified her from receiving benefits based on the fact that she had voluntarily quit her job with the respondent to go back to work for her primary employer. We affirm the Commissioner's determination that Hackenmiller voluntarily quit her job with the respondent, but conclude the Commissioner erred by failing to address Hackenmiller's entitlement to benefits from her primary employer.

---

[*] Acting as judge of the Court of Appeals by ap-

## FACTS

On August 17, 1985, Bethel Hackenmiller was separated from her employment with the Hormel Meat Packing Plant in Austin, Minnesota, due to a strike. Hackenmiller had been earning $9.25 per hour, working full-time for Hormel prior to the strike. On August 18, Hackenmiller filed a claim for unemployment compensation benefits as a result of her separation from Hormel.

On September 16, 1985, Hackenmiller began working full-time for the respondent Ye Olde Butcher Shoppe, earning $5.00 per hour. The record indicates this position was intended to be temporary, until the strike at Hormel ended.

On January 4, 1986, Hackenmiller received a letter from Hormel stating the Austin plant would be reopened on January 13 and requesting all employees to come back to work on that date. On January 11, Hackenmiller quit her employment at Ye Olde Butcher Shoppe, intending to return to Hormel. Although she attempted to return to Hormel, Hackenmiller was intimidated by the strikers and decided not to cross the picket line. She thereafter reopened her claim for unemployment compensation benefits.

Hackenmiller's claim for benefits was initially denied on the basis that she voluntarily quit her job with Ye Olde Butcher Shoppe. Following several appeals and two hearings, a Commissioner's representative from the Department of Jobs and Training, determined Hackenmiller voluntarily quit her job without good cause attributable to Ye Olde Butcher Shoppe. The representative determined Hackenmiller was disqualified from receiving benefits even though she intended to go back to Hormel when she left Ye Olde Butcher Shoppe, because she had not actually accepted reemployment with Hormel. The Commissioner's representative denied Hackenmiller's request for another remand, explaining Hackenmiller already received two hearings to explain her position.

In another, separate, decision, the Department of Jobs and Training determined

pointment pursuant to Minn. Const. art. 6, § 2.

the strike at Hormel ended on June 2, 1986, and affected employees were eligible to receive unemployment compensation benefits after that date.

## ISSUES

1. Did Hackenmiller voluntarily quit her employment without good cause attributable to the Ye Olde Butcher Shoppe?

2. Did Hackenmiller voluntarily discontinue her employment to accept work offering substantially better conditions of work?

3. Did the Commissioner's representative err by refusing to remand for additional testimony?

4. Should Hackenmiller's voluntary quit disqualification be applied to deny her benefits from Hormel?

## ANALYSIS

### 1. *Voluntary Quit Without Good Cause*

■ An individual who voluntarily quits employment without good cause attributable to the employer is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(1) (1984). The record clearly indicates Hackenmiller voluntarily quit her employment with Ye Olde Butcher Shoppe. In fact, Hackenmiller admitted her separation was voluntary.

The record also supports the Commissioner's determination that Hackenmiller's separation was without good cause attributable to Ye Olde Butcher Shoppe. Hackenmiller claimed at the hearings that she quit because she wanted to return to work for Hormel and because the distance between her home and Ye Olde Butcher Shoppe made travel difficult during periods of inclement weather. Hackenmiller's desire to return to work for Hormel cannot be attributed to Ye Olde Butcher Shoppe, nor can her transportation problem. *See, e.g., Hill v. Contract Beverages, Inc.,* 307 Minn. 356, 358–59, 240 N.W.2d 314, 316 (1976) ("In the absence of contract or custom imposing an obligation of transportation upon the employer, transportation is usually considered the problem of the employee. Prior decisions * * * have sustained denial of benefits where employees terminated their work because of their particular needs.")

### 2. *"Better Work" Provision*

■ The legislature provides an exception to the voluntary quit disqualification where an individual discontinued employment "to accept work offering substantially better conditions of work or substantially higher wages or both." Minn.Stat. § 268.09, subd. 1(2)(a) (1984). Here, however, although Hackenmiller intended to accept work with Hormel offering substantially higher wages, she did not actually accept such work; therefore, we agree with the Commissioner that the above statutory exception to disqualification is not applicable. As this court stated in *McDonnell v. Anytime Temporaries,* 349 N.W.2d 339 (Minn.Ct.App.1984), "[t]he mere possibility of obtaining other employment is not sufficient to constitute good cause for voluntarily terminating one's employment." *Id.* at 341. Similarly, an individual should not be allowed to receive benefits if he voluntarily discontinued his employment with the "mere possibility" of accepting work offering substantially better conditions or substantially higher wages.

### 3. *Remand*

■ The Commissioner is accorded broad discretion when determining whether to remand for additional evidence. *Zielinski v. Ryan Co.,* 379 N.W.2d 157, 161 (Minn.Ct. App.1985). Here, the Commissioner's refusal to remand for additional testimony regarding the good cause issue was not erroneous, since Hackenmiller had already been allowed two hearings to present evidence on that issue.

### 4. *Disqualification*

■ Hormel was Hackenmiller's primary employer, paying her $9.25 an hour. Hackenmiller only began working for Ye Olde Butcher Shoppe at $5.00 per hour when she was separated from Hormel due to the strike. When the strike and result-

ant disqualification ended,[1] Hackenmiller might have been entitled to receive benefits along with Hormel's other employees.

Throughout its progress, this case has been entitled *Bethel Hackenmiller v. Ye Olde Butcher Shoppe.* Hormel is not named as a party, nor is there any evidence in the record Hormel appeared as such. Nevertheless, we note the Commissioner's decision apparently disqualifies Hackenmiller entirely from receiving unemployment compensation benefits, even from Hormel, contrary to several previous cases decided by the Minnesota appellate courts.

In *Berzac v. Marsden Building Maintenance Co.,* 311 N.W.2d 873 (Minn.1981), claimants for unemployment compensation benefits who had voluntarily terminated part-time jobs and were subsequently laid off from their full-time jobs were held entitled to receive benefits from the full-time employers. The *Berzac* court stated:

> In practical effect, the department has concluded that if an individual voluntarily discontinues but one of multiple employment positions, the disqualification of section 258.09, subd. 1(1) precludes the receipt of benefits from any employer, regardless of the circumstances creating the unemployment.
>
> It is our view that the legislature could not have intended such an unfortunate result, particularly given the declared legislative intent to provide benefits for those who, through no fault of their own, are unemployed. Instead, a reasonable interpretation of section 268.09, subd. 1(1) would be that the department consider and decide claim petitions, in the unique situations presented here, as they relate to each of the multiple employers. In that manner, the department could determine that, as to one employer, the termination was voluntarily and without good cause attributable to the employer, but as to the other, the employee might well be entitled to receive unemployment compensation benefits.

*Id.* at 875 (citation omitted). This language suggests that here also, Hackenmiller's separation from Ye Olde Butcher Shoppe should be considered independently of her separation from the Hormel Company.

The *Berzac* court noted that the record did not establish whether claims for unemployment benefits were filed by the claimants against their primary full-time employers. The court therefore remanded the matter to the Commissioner to determine the employees' rights to receive benefits from each of their respective multiple employers. *Id.*

In *Sticka v. Holiday Village South,* 348 N.W.2d 761 (Minn.1984), an employee had been involuntarily terminated from her principal employment as an engineer, and thereafter voluntarily discontinued two part-time jobs without good cause attributable to the part-time employers, to search for further employment as an engineer. The *Sticka* court stated:

> When relator's principal employment as a structural engineer was terminated, she became "unemployed." The character of that termination * * * must be determined as of the date of termination.
>
>  * * * * * *
>
> [A]lthough the relator's eligibility for benefits as a result of the termination of her employment as a structural engineer is undisputed, the record before us does not indicate whether or not a claim against that employer, unidentified in these proceedings, has been considered and decided. The matter is, therefore, remanded to the Commissioner for determination of the relator's right to receive benefits based on termination of her principal employment * * *.

*Id.* at 763.

Finally, in *Kuether v. Personnel Pool of Minnesota,* 394 N.W.2d 259 (Minn.Ct.App. 1986), this court held that after an employee had been laid off from permanent full-

---

1. During a strike, an employee is not entitled to receive unemployment compensation benefits, but after the strike has ceased, if the employee is not recalled to work, and if he has not otherwise been disqualified from receiving unemployment compensation benefits, he is then entitled to receive those benefits. *Ayers v. E.F. Johnson Co.,* 244 Minn. 375, 380–81, 70 N.W.2d 296, 299 (1955); Minn.Stat. § 268.09, subd. 3 (1984).

time work as an appliance repairman, his rejection of temporary unsuitable work should not penalize him from receiving unemployment compensation benefits. The court stated:

We believe that to deny Kuether unemployment compensation benefits under the present circumstances would, in effect, penalize him for doing temporary work while seeking full-time, permanent employment. If Kuether had not signed up for temporary work, he would be entitled to receive benefits. As the supreme court has noted, the legislature could not have intended such a counterproductive result.

*Id.* at 261.

Here, also, we do not find it reasonable to penalize Hackenmiller for working at the Ye Olde Butcher Shoppe while the strike continued at Hormel. If Hackenmiller had not taken the job with the Ye Olde Butcher Shoppe, she could have renewed her claim for unemployment compensation benefits when the strike at Hormel ended. To deny her that same opportunity because she had accepted and then quit a job with Ye Olde Butcher Shoppe during the period of the strike would be contrary to the *Kuether, Berzac,* and *Sticka* rulings.

While the findings of the Commissioner are generally accorded deference, in each of the cases discussed above, the court reversed the Commissioner's decision. Here, likewise, we find the Commissioner erred by determining Hackenmiller is automatically disqualified from receiving all unemployment compensation benefits. Nevertheless, we need not remand to the Commissioner for a determination whether Hackenmiller is entitled to receive benefits based upon her employment with Hormel. Our decision in *Hormel v. Asper, et al.,* 415 N.W.2d 706 (Minn.Ct.App.1987) effectively denies benefits to all Hormel employees who participated or were directly interested in the strike.

## DECISION

We affirm the Commissioner's determination that Hackenmiller voluntarily quit her employment with Ye Olde Butcher Shoppe without good cause. We also affirm the Commissioner's refusal to remand for additional evidence on the good cause issue. While the Commissioner erred by failing to address Hackenmiller's entitlement to benefits based on her prior employment with Hormel, our decision in *Hormel* will operate to deny Hackenmiller those benefits.

Affirmed in part and reversed in part.