OPINION
Plaintiff, Barbara L. O'Grady, and Defendant, John Patrick O'Grady, were married in 1978. Two children were born of the marriage. Both children were emancipated when Barbara[1] and John's marriage was terminated by a decree of divorce on March 19, 2001.
John filed a notice from the judgment and decree of divorce. Barbara filed a notice of cross-appeal. Their respective assignments of error are addressed below.
 I. ASSIGNMENTS OF ERROR OF DEFENDANT/APPELLANT JOHN PATRICK O'GRADY FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION WHEN IT AWARDED PLAINTIFF HALF OF ALL THE DEFENDANT'S RETIREMENT PLANS WITH AMOUNTS SET AS OF JUNE 2000, BUT ONLY AWARDED DEFENDANT HALF OF PLAINTIFF'S STATE EMPLOYEES RETIREMENT SYSTEMS ACCOUNT WITH THE AMOUNT SET AS OF JUNE 1999 NOT JUNE 2000 AND WITHOUT INCLUDING THE ADDITIONAL ACCRETIONS TO THE SAID ACCOUNT MADE FROM JUNE 1999 TO JUNE 2000.
A domestic relations court that enters a judgment and decree of divorce is required to divide the parties' marital and separate properties equitably between them. R.C. 3105.171(B). For that purpose, the marital property must be divided equally, unless the court finds that an equal division would be inequitable. R.C 3105.171(B). Further, "if the court determines that a division of the marital property in kind or in money would be impractical or burdensome," the court may distribute an item of marital property to one of the spouses rather than divide it. R.C.3105.171(E)(2). In that event, equity supports some compensating, though not necessarily equal, award to the other spouse.
Retirement accounts are marital property. R.C. 3105.171(A)(3)(a)(i). Each spouse is therefore entitled to a one-half share of any retirement account owned by the other that was accumulated during the marriage. Absent a specific finding by the court to the contrary, "during the marriage" means the period from the date of the marriage through the date of the final hearing in an action for divorce. R.C. 3105.171(A)(2)(a). Logically, the same dates apply when dividing the assets of each spouse.
Barbara owns a State Teacher's Retirement System (STRS) account. The court awarded John one-half its value as of June, 1999. John owned several retirement plans. The court awarded Barbara one-half of their values as of June, 2000. John argues that this is inequitable because the same date of division should have been used for all the plans.
We agree that the court should have used the same date to divide both Barbara's and John's retirement accounts. The June, 1999 date that the court used to value Barbara's STRS account yielded a value of $4,907.77, which is the value of the account the court found and divided. However, the parties stipulated at the hearing on September 11, 2000 that the value of Barbara's STRS account as of June 20, 2000 was $6,103.38. (T. p. 113). Barbara concedes that the trial court abused its discretion when it valued her account at its lesser, 1999 value. That may have been more of an oversight due to a complex record than an abuse of discretion, but it is reversible error nevertheless.
John's first assignment of error is sustained.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION WHEN IN THE ABSENCE OF ANY FINDING OF FINANCIAL MISCONDUCT, THE COURT FAILED TO AWARD AN EQUAL DISTRIBUTION OF PROPERTY NOTWITHSTANDING THE AVAILABILITY OF ASSETS TO ACHIEVE SUCH EQUAL DISTRIBUTION.
The trial court divided the parties' interests in their marital residence, vehicles they owned, and numerous financial accounts, including their retirement accounts. The court valued the entire marital estate at $991,577.93. It awarded Barbara $499,032.31, or 50.33% of the total. John was awarded $492,545.62, or 49.67% of the total. The difference between their shares is $6,486.69, or 0.0065% of the total.
The trial court was required to make an unequal division of the monies in the parties' depository accounts in order to compensate for its distributive award of other marital assets. The court divided one of the deposit accounts, awarding Barbara $13,500.83 and awarding John $31,971.90. Several other deposit accounts were awarded to one or the other parties in toto.
Valuations are never exact. Here, for example, the parties' failure to provide more current data required the court to omit from its calculations accumulations of interest of which it was unaware. In view of the size of the marital estate, that, alone, might eradicate or double the slight difference between the respective awards the court made to John and to Barbara. On this record, the $6,487 difference in the awards is deminimus. Further, the court's desire to award some of the accounts to one party most likely made an absolutely equal division impractical or burdensome. R.C.3105.171(E)(2). We find no abuse of discretion.
John's second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO ORDER A RETURN TO DEFENDANT OF HIS SEPARATE PERSONAL PROPERTY WHICH HE HAD YET TO RETRIEVE FROM THE MARITAL RESIDENCE AND WHICH WERE NOT MARITAL ASSETS.
The court had by a temporary order to which the parties agreed awarded Barbara exclusive use of the marital residence but allowed John to take with him numerous articles of personal property. The agreed temporary order was entered on May 24, 2000. John complains that he had not retrieved all the articles of property identified in the temporary order when the court entered its judgment and decree of divorce on March 19, 2001, which awarded all of the articles to Barbara.
John testified at the final hearing of December 12, 2000 that he had not been able to retrieve certain articles of property, some of which were missing or damaged. (T. 45-50). However, the court was not required to credit John's testimony. Even if it did, the court was not bound in any way by its March 24, 2000 temporary order.
It is fundamental that any relief granted in a temporary order is interlocutory and is merged into the final decree, which awarded the property to Barbara instead of John. He does not argue that the court abused its discretion in so doing, other than it should have abided by its temporary order. The court was not required to do so.
If John was denied the right to retrieve his property from the marital residence on account of any misconduct of Barbara, John's remedy was to file charges in contempt alleging that Barbara had violated the court's temporary order of May 24, 2000. The court might then order Barbara to afford John an appropriate opportunity to have the items, on pain of contempt. It could order specific sanctions on a finding of contempt. John didn't pursue that route, but instead raised the issue in his testimony at the final hearing. The court rejected the claim on its merits, as it was authorized to do.
The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO INCLUDE ALL EQUITY IN THE HOME RESULTING FROM PAYMENTS AGAINST THE MORTGAGE WHICH CONTINUED TO BE MADE DURING THE PENDENCY OF THE DIVORCE ACTION AND THUS DURING THE TERM OF THE MARRIAGE.
The trial court awarded the marital residence and the equity in the marital residence to Barbara. The court valued the equity at $170,775.44, which it found after deducting the principal balance due on the mortgage from the stipulated fair market value of $240,000. John was awarded an offset from monies that Barbara would otherwise receive from his retirement account, plus other assets.
John complains that the trial court abused its discretion when it found that the principal balance owed on the mortgage was $69,000.85 as of the date of the final hearing. That was the amount shown on Plaintiff (Barbara's) Exhibit 2, a mortgage pay-off statement. The court noted in its decree that the exhibit was the basis of its finding. John points out, however, that Barbara testified that the pay-off amount shown on the exhibit does not reflect two monthly payments that Barbara made after the statement was prepared. (T. 9/18/00, p. 84). Those two payments would have reduced the balance due approximately $900, increasing John's share of the equity and the offset he was awarded by approximately half of that.
At the close of the second final hearing, on December 12, 2000, Barbara offered Plaintiff's Exhibit 2 to show the amount of the mortgage balance. (T. p. 138). John expressly waived any objection to the exhibit, and the court admitted it in evidence. (T. 152).
John's failure to object to Barbara's introduction of the mortgage pay-off statement for the purpose for which she offered it bars his argument on appeal that the trial court abused its discretion when it used the exhibit for that purpose and made a finding based on it. That failure is understandable, as the difference involved, approximately $450 in John's favor, is negligible in relation to the other, far more substantial values and amounts to which his attorney devoted substantial time and energy in the same proceeding.
John's fourth assignment of error is overruled.
 II. ASSIGNMENTS OF ERROR OF PLAINTIFF/CROSS APPELLANT BARBARA O'GRADY FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED BY IMPUTING INCOME TO PLAINTIFF SINCE THERE WAS AN INSUFFICIENT BASIS TO BOTH FIND THE PLAINTIFF UNDEREMPLOYED AND TO ESTABLISH PREVAILING JOB OPPORTUNITIES AND SALARY LEVELS IN THE COMMUNITY IN WHICH PLAINTIFF RESIDES.
The trial court ordered John to pay Barbara spousal support at the rate of $2,694 per month, or $32,328 per year, for a period of ten years. In so doing the court considered the duration of the marriage, the health and physical condition of the parties, and the standard of living they enjoyed during their marriage. The court also considered their respective incomes. John's is $160,000 per year. Barbara's is $13,606 per year, which she earns from the Sugarcreek Local School District as a technology specialist, working nine months each year.
Barbara argues that the trial court abused its discretion when it calculated the amount of support she needed based on the following finding:
"Imputed Income
 The Plaintiff has earned an Associates Degree in Legal Assisting from Sinclair Community College. She is currently employed by the Sugarcreek Local School District earning an annual wage of Thirteen Thousand Six Hundred Six Dollars and Thirty-two Cents ($13,606.32). It is determined from the evidence and testimony presented and pursuant to R.C. 3113.215(A)(5)(a) that the Plaintiff is under employed. Therefore, income is imputed to her in the amount of Twenty Thousand Eight Hundred Dollars ($20,800.00) per year. This sum represents the gross amount of potential income the Plaintiff would earn if she were fully employed in an entry level clerical position within a law office or government entity located in Greene County, Ohio. The Twenty Thousand Eight Hundred Dollars ($20,800.00) per year is based upon a hypothetical wage of $10.00 per hour at forty hours per week for fifty-two weeks per year. The Defendant's income will be based upon his testimony that he receives One Hundred Sixty Thousand Dollars ($160,000.00) per year in disability benefits, pursuant to R.C. 3113.215(A)(2)."
Judgment and Decree, pp. 2-3.
R.C. 3113.215, on which the trial court specifically relied to find the incomes of both parties, governs calculations of child support obligations. Paragraph (A)(5)(a) of that section authorizes the court to impute income an obligor would have earned if fully employed when the court finds that the obligor is voluntarily underemployed. A specific income finding is necessary in order to calculate the child support obligation derived from the Basic Child Support Schedule and Worksheet for which R.C. 3113.215 also provides.
Awards of spousal support are governed by R.C 3105.18, which authorizes the court to award support if and when that is reasonable, in an amount and on terms that are reasonable. In making those determinations, the court is required to consider the factors set out in paragraph (C)(1) of that section that are applicable to the parties involved. One of these is their respective incomes. Another is the relative earning abilities of the parties. Taken together, they allow the court to find that either party might earn a greater income than he or she does.
The income that the trial court "imputed" to Barbara is a product of its finding that she has the ability to earn more than she does. Contrary to the court's suggestion, its finding is not governed by the more exacting standards of R.C. 3113.215(A)(5)(a), but the broader and largely discretionary standards of R.C. 3105.18. Nevertheless, the court's findings must have support in the record.
Barbara argues that the record fails to reflect the employment potential and probable income that the court found. With respect to employment potential, there is evidence that Barbara was awarded an associates degree by Sinclair Community College, that she was employed for a short time by a law firm as a paralegal assistant, and that she now works full-time for nine months each year. Clearly, she is employable. The issue is whether a higher income is reasonably available to her.
The trial court found that Barbara might earn ten dollars per hour, or $20,800 per year, "if she were fully employed in an entry level clerical position, within a law office or government entity located in Greene County, Ohio." We have no doubt that the court, based on its long experience working in those entities, is in a good position to know the applicable salaries for such positions. The court may take judicial notice of facts not subject to reasonable dispute. Evid.R. 201(B). However, that has been held to not include rates of remuneration, hours, or other conditions of work. Kotmer v. Unemployment Compensation Board of Review(1947), 148 Ohio St. 614. There must be some positive evidence in therecord to support the court's findings concerning those matters. Id.
The trial court may, in the exercise of the broad discretion that R.C.3105.18 confers, determine that a party's need for spousal support is diminished by an income he or she could reasonably earn but does not. However, there must be evidence showing what that amount of potential income is. Evidence to support the finding of an amount of income reasonably available need be no more elaborate than evidence offered to show what amount of attorneys fees is reasonable for purposes of an award. The party who is a proponent of the imputed income finding bears the burden of its proof.
Barbara's first assignment of error is sustained.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN THE AMOUNT OF THE AWARD OF SPOUSAL SUPPORT TO PLAINTIFF BECAUSE IT WAS BASED UPON INCOME IMPROPERLY IMPUTED TO PLAINTIFF.
We can discern no difference between this assignment of error and the preceding assignment. It is sustained on the same basis.
 Conclusion
Having sustained John's first assignment of error and Barbara's first and second assignments of error, we will reverse the order from which their appeals were taken in the particular respects involved and remand for further proceedings on the issues of property division and spousal support.
BROGAN, J. and FAIN, J., concur.
[1] For purposes of convenience and clarity, the parties are identified by their first names.